# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

JAGDISH C. LAUL,

      Plaintiff,

vs.                                                             No. 1:17-cv-0741-WJ-KBM

LOS ALAMOS NATIONAL
LABORATORIES,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon a Motion for Summary Judgment filed on August 9, 2019 by Defendant Los Alamos National Laboratories ("LANL") (**Doc. 58**).[1] Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is well-taken and, therefore, is granted.

## BACKGROUND

This is an employment discrimination case filed by Plaintiff Jagdish C. Laul ("Plaintiff" or "Dr. Laul") against his former employer for discrimination and retaliation based on age and national origin. At the time the complaint was filed on July 14, 2017,, Dr. Laul was a 78 year-old naturalized citizen of East Indian birth. He was terminated from employment at LANL on December 6, 2013 for poor performance after he unsuccessfully participated in a year-long Performance Improvement Plan. *See Laul v. Los Alamos National Laboratories*, LLC, No. 16-cv-

---

[1] Los Alamos National Laboratories was the named defendant in the Complaint, but in its answer (Doc. 6), Defendant identifies itself as Los Alamos National Security, LLC ("LANS"). However, Defendant uses LANS and LANL interchangeably in the briefs and the Court will follow Defendant's direction in their usage.

01017 JAP/KBM, 2018 WL 2122842 (D.N.M. May 8, 2018), Doc. 71 at 3, aff'd, 765 Fed.Appx. 434 (10th Cir. 2019) (*"Laul II"*).

## I.     Previous Lawsuits

This is the fourth lawsuit Plaintiff has filed against his former employer since 2015.  Two of those cases were dismissed on the merits in favor of Defendant, and one was remanded to state court which recently granted Defendant's motion to compel arbitration:

> (1) *Laul v. Los Alamos National Laboratories, LLC*, No. 15-cv-00749 JAP/KBM, 309 F.Supp.3d 1119 (D.N.M. 2016), aff'd, 714 Fed.Appx. 832 (10th Cir. 2017), reh'g denied, cert. denied, 138 S.Ct. 2602 (2018) (*"Laul I"*). Plaintiff alleged age and national origin discrimination based on his termination from employment in December 2013 for unsatisfactory work performance and for failure to rehire. Senior U.S. District Judge James A. Parker granted summary judgment to Defendant, finding that LANL did not rehire Plaintiff because he had been terminated from his former position for poor performance and not from illegal or discriminatory motives. Doc. 83. The Tenth Circuit Court of Appeals affirmed the rulings in favor of Defendant in November 2017. Plaintiff filed a Petition for Writ of Certiorari in the United States Supreme Court in February 2018, which was denied on June 4, 2018.  Doc. 100.

> (2) *Laul v. Los Alamos National Laboratories*, LLC, No. 16-cv-01017 JAP/KBM, 2018 WL 2122842 (D.N.M. May 8, 2018), aff'd, 765 Fed.Appx. 434 (10th Cir. 2019) (*"Laul II"*). Plaintiff alleged retaliation based on Defendant's failure to rehire him between October 2014 and May 2015. This case was also resolved on summary judgment in favor of Defendant by Judge Parker.  Doc. 71. The Tenth Circuit affirmed the rulings in that case in May 2019. In August 2019, Plaintiff filed a Petition for Writ of Certiorari in the United States Supreme Court which was recently denied on December 4, 2019. Doc. 85.

> (3) *Laul v. Los Alamos National Security, LLC*, No. 16-cv-1386 MV/JHR (*"Laul III"*). Plaintiff filed this case, primarily a lease dispute, in the First Judicial District Court, Los Alamos County.  Defendant removed the case to federal court where it was subsequently remanded to state court by United States District Judge Martha Vazquez. Doc. 29.  *See Laul v. Los Alamos Nat'l Security*, D-132-CV-2016-00098.  In February 2019, the state court granted Defendant's motion to compel arbitration and stay of the state court case.

## II.    Instant Lawsuit

In this most recent lawsuit (*"Laul IV"*), Dr. Laul revisits issues relating to his termination and rehiring which have been previously litigated and alleges new claims of discrimination and retaliation regarding 14 additional LANL jobs for which he applied between August 2015 and March 2016 but was not selected. The job postings at issue in this litigation are:

| | |
|---|---|
| IRC 42817 | Environmental Professional 3 position |
| IRC 43155 | Safety Basis Manager 4 position |
| IRC 43636 | Environmental Professional 4 (SRS) position |
| IRC 43695 | Environmental Professional 4 (TRU Waste) position |
| IRC 44475 | Nuclear Criticality Safety Analyst 1/2 |
| IRC 44537 | Environmental Professional 3 position |
| IRC 44863 | Scientist 1/2 |
| IRC 44975 | Scientist 3 |
| IRC 45015 | ESH&Q Quality Assurance Engineer 2 |
| IRC 47970 | Safety Basis Manager 4 |
| IRC 48059 | Safety Basis Manager 3/4 |
| IRC 48229 | TRU Waste Sciences Manager 2/3 |
| IRC 48448 | Quality Assurance Specialist 3/4 ; and |
| IRC 48649 | Criticality Safety Officer 2 |

Defendant presents over one hundred facts, addressing each of the 14 positions. Plaintiff "disputes" almost every one of those but fails to offer any actual evidence to rebut them. His "responsive" facts fall into one (or more) of three categories: (1) facts that are unsupported by the evidence; (2) facts that misrepresent the evidence; and (3) facts that are irrelevant or immaterial.

For example, Defendant's Fact 30 states that the hiring committee members believed that Paul Newberry was the best qualified for the IRC 43636 position. Plaintiff "denies" this fact in his response, proceeds to recite his own qualifications, then states that "[a] member of the [hiring] committee admits the Plaintiff was on the top of the list." Doc. 61 at 7. Plaintiff's references to his resume do not qualify as responsive facts. *See Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1329 (10th Cir.1999); *cmp. Selenke v. Med'l Imaging of Colorado*, 284 F.3d 1249, 1265 (10th Cir. 2001) (It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of her own relative

performance). Also, Plaintiff's affidavit statements that he was "better qualified" than other applicants, *see* Doc. 61-1 at 5, is not evidence that can be used to refute Defendant's facts. *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir.1995) (a nonmovant's conclusory and self-serving affidavit, without other supporting evidence, is insufficient for the purpose of surviving summary judgment); *Garrett v. Hewlett Packard Co*. 305 F.3d 1210, 1218 (10th Cir. 2002).

As Defendant observes, Plaintiff's assertion that he was "on top" of the candidate list is not supported by the record at all and the exhibits Plaintiff cites to say nothing of the kind. In fact, Wayne Hohs, the hiring manager for that position, *excluded* Dr. Laul from his list of top qualifiers. Doc. 58-8 (Hohs Aff). at 2, ¶6 ("Dr. Laul's name was not included on my initial list of candidates to be interviewed as I did not view him as one of the best qualified applications, based on what I felt were the key attributes the Group Leader would require for the tasks identified above.").

As another example, Defendant's Fact 59 states that Kent Abney, the hiring manager for IRC 44863, asked the First Line Managers from the Manufacturing and Technology Division ("MET") to recommend candidates who were best qualified for that position. Plaintiff attempts to dispute this fact using Dr. Abney's deposition testimony that the hiring committee did not provide him with specific information as to why Dr. Laul was deemed "not best qualified" by them. Doc. 61 at 16 (Resp. to Fact 59). There is no inconsistency between Defendant's Fact 59 and Dr. Laul's testimony that the hiring committee "made a recommendation to me about who to hire for [the position]" and so there is no dispute, either. Doc. 58-12 at 2-3, ¶10.

It would serve no purpose to continue with other examples of Plaintiff's attempts to dispute Defendant's facts. Instead, the Court will discuss the relevant facts (and purported "disputes") within the appropriate discussions.

### III.     Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could have an effect on the outcome of the suit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the nonmoving party. *EEOC v. Horizon/CMS Heathcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). A court is to view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). A court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

## DISCUSSION

In Counts I and II of the complaint, Dr. Laul asserts claims of discrimination on the basis of age (ADEA) and national origin (Title VII). In Count III, Plaintiff alleges that LANL retaliated against him in violation of Title VII, because of his "complaints of discrimination in the workplace." Doc. 1, ¶34. The Court will first address the discrimination claims based on age and national origin in Counts I and II, and then move on to Plaintiff's retaliation claim in Count III.

### I.     Discrimination Based on Age and National Origin-Title VII and ADEA

Defendant offers several arguments for dismissal of Plaintiff's discrimination claims.

1. Plaintiff is collaterally estopped from re-litigating claims previously litigated and actually determined against him in *Laul I* and *Laul II*;

2. Plaintiff cannot establish that he was "qualified" for any of the positions at issue due to the site restriction put in place in July 2015 that prohibited him from entering onto Laboratory property for any reason, including employment, thereafter;

3. Without regard to the site restriction, Plaintiff either cannot establish a prima facie case because he was not "minimally qualified" for many of the positions for which he applied or he cannot show an inference of discrimination for those positions where he was rated as "not best qualified."

A.     Relevant Law

Claims under both Title VII and the ADEA are analyzed under the familiar burden-shifting requirements of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Garrett v. Hewlett Packard Co*., 305 F.3d 1210, 1216 (10th Cir. 2002); *O'Connor v. Consolidated Coin Caterers Corp*., 517 U.S. 308 (1996) (assuming that Title VII's McDonnell Douglas burden shifting framework applies to ADEA case).

The plaintiff in both ADEA and Title VII cases bears the initial burden of setting forth a prima facie case of discrimination.  The burden of establishing a prima facie case by a preponderance of the evidence is not onerous. *McCowan v. All Star Maint., Inc*., 273 F.3d 917, 922 (10th Cir. 2001).  To establish a prima facie case under either the ADEA and Title VII, the plaintiff must show: 1) he is a member of the class protected by the statute; 2) he suffered an adverse employment action; 3) he was qualified for the position at issue; and 4) he was treated less favorably than others not in the protected class. *See Thomas v. Denny's Inc*., 111 F.3d 1506, 1510 (10th Cir.1997) (race); *Corneveaux v. Cuna Mut. Ins. Group*, 76 F.3d 1498, 1502 (10th Cir.1996) (age); *Jones v. Unisys Corp*., 54 F.3d 624, 630 (10th. Cir.1995) (age); *Cole v. Ruidoso Municipal Sch*., 43 F.3d 1373, 1380 (10th Cir.1994) (gender).

If the plaintiff meets his burden of establishing a prima facie case burden, the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for the termination that is not facially prohibited by Title VII." *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004) (quotation marks omitted).  Once the defendant does this, then it is the plaintiff's burden to show that the stated reason is "a pretext for racial discrimination." *Id*.

For purposes of addressing Plaintiff's discrimination claims, the Court's analysis need go no further than a discussion at the prima facie stage. Plaintiff's claims of discrimination based on age and national origin are subject to dismissal because of a site restriction put in place in July 2015 which prohibits Plaintiff from entering onto LANL property for any reasons, including employment.

B.    Facts Relevant to Site Restriction ("BOLO")

All Laboratory ("Lab employees and contractors are required to have, display and maintain site Access Badges in order to work on LANL property. *Id*. at ¶ 4. There are four primary types of long-term badges that are issued to individuals who work on LANL property: (1) Laboratory ("LAB") badge; (2) Contractor ("CON") badge); (3) External ("EXT") badge; and an Affiliate ("AFF") badge.

Dr. Laul had been issued a LAB and a CON badge. Dr. Laul has not had a LAB badge since December of 2013 when his employment was terminated for poor performance. The security clearance associated with this badge was a "Q" clearance, which was also revoked in 2013 when he was terminated. Dr. Laul was also issued a CON badge on June 11, 2014. This was an "uncleared" badge, meaning that there was no security clearance associated with it. Doc. 58-3 at 3. The CON badge was destroyed on July 6, 2015. *Id.,* Attachment A.

On June 30, 2015, the LANS Personnel Security Department issued a "Be On The Lookout" ("BOLO") and a LANL property restriction prohibiting Dr. Laul from accessing or being physically present on any part of LANL property, which encompasses the Carlsbad and Los Alamos Operations sites in Carlsbad and Los Alamos, New Mexico. Doc. 58-3-5 (Martinez Decl). The BOLO was issued because of Plaintiff's "inappropriate" conduct toward a Laboratory worker. Doc. 58-3 at 6.

Judge Parker's opinion in *Laul II* includes the circumstances relevant to the issuance of the BOLO. In early 2014, following his termination in December 2013, Plaintiff went to LANL' Occupational Medicine building to speak to Janet McMillan, a Certified Occupational Health Nurse at LANL and the wife of LANL' Director, Charles McMillan. *Laul II,* 16cv01017 JAP-KBM, Doc. 71 at 4-5. Plaintiff told Ms. McMillan that he had been unfairly discharged and asked her to take the documents to her husband and tell her husband to reinstate his employment. When she refused, Plaintiff raised his voice and approached Ms. McMillan in her "personal space," telling her that he would contact the press and make things "very ugly" for Ms. McMillan, her husband and the Laboratory if she did not give her husband the documents. Ms. McMillan felt threatened by Plaintiff's conduct. As she exited her office, Plaintiff followed her out to the front desk, continuing his threats to contact the press and make things ugly, and then exited the building. Ms. Millan reported the incident to her supervisor, but no official report was filed because Ms. McMillan hoped she had "given information to Plaintiff that would help him." *Id*. at 5.

Plaintiff visited the Occupational Medicine building again on June 30, 2015 and asked Ms. McMillan if they could go to a private place to talk. Ms. McMillan told him that she preferred to discuss the matter where they were, in the lobby of the building.[2] Plaintiff had an envelope which he said were papers he wanted Ms. McMillan to present to her husband to help get his job back. Ms. McMillan again refused to take the documents and Plaintiff threated to "make it very ugly"

---

[2] Ms. Millan testified that she was "nervous" because she did not understand how Dr. Laul had been allowed to get into the Occupational Medicine building without a badge. *See Laul II,* 16cv1017, Doc. 71 at 5 ("He said he had not gotten his job back … and this made me nervous, because if he didn't get that job back, I didn't know how he would be able to be in the building, because it's a secure building and you have to badge in . . . ."). This Court had the same question about Plaintiff's ability to get into the Occupational Medicine building without a badge, since he had been terminated a few months before he visited Ms. Millan. However, according to LANL security, while Dr. Laul's LAB badge was destroyed when he was terminated, he still had a CON access badge and possibly used that to gain entry. *See* Doc. 58-3 at 2-3. The other possibility is that he could access the property as a visitor, as Plaintiff claims he was still able to do as a visitor. *See Laul III,* 16-cv-01386 MV-JHR, Doc. 1-2, ¶12. Nevertheless, how Dr. Laul accessed LANL property to see Ms. McMillan is not relevant to the summary judgment issues raised here.

for her.  Plaintiff's comments were overheard by at least one other worker who had walked into the lobby.  One of these workers, Wally Collings, intervened.  He asked Ms. McMillan to go to her office and then escorted Dr. Laul out of the building.  *Id.* at 5.

This second incident was reported to Richard Marquez, Executive Director of LANS and to the LANL Personnel Security office, after which the BOLO was issued, effective July 1, 2015. Dr. Laul's CON badge was destroyed on July 6, 2015.  *Id.*  On July 8, 2015, the Lab's general counsel informed Plaintiff by letter that nothing had changed since the issuance of the restriction. The letter states that LANL did not intend to revisit the termination of Plaintiff's employment; that Plaintiff was currently prohibited from obtaining a Laboratory badge which meant he was not eligible for Laboratory employment; and that the prohibition "will remain in effect indefinitely." Doc. 58-3 at 8.

B.    Analysis

In this lawsuit, Plaintiff asserts that LANL discriminated against him on the basis of age and national origin because it did not rehire him for any of the 14 positions for which he applied between August 2015 and March 2016.  Each of the 14 positions for which Dr. Laul applied require the successful candidate to obtain an access badge and work on a LANL site.  *See, e.g.,* Doc. 58-10 at 8; Doc. 58-11 at 11.  All of Plaintiff's job applications at issue in this case took place *after* the BOLO was issued. What defies common sense is how Plaintiff expected to qualify for any of these positions if he was permanently prohibited from entering LANL property.  Plaintiff had been told that because of the BOLO, he could not obtain a Lab badge and therefore was not eligible for Lab employment. Doc. 58-3 at 8.

In showing that he is "qualified" for the purpose of establishing a prima facie case, a plaintiff need only show a basic eligibility for the position at issue. *Slattery v. Swiss Reinsurance*

*Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001), *as amended* (June 6, 2001); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575–76 (6th Cir. 2003) (plaintiff can show he is qualified by "presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field."). Throughout his briefing, Plaintiff insists he was best qualified for every one of the 14 jobs but ignores the one immovable obstacle to his ability to perform any of them: he is restricted indefinitely from entering any LANL property as an employee or even on assignment to a LANL subcontractor.

The Court has not found any case law including the ability to enter work property as a job "qualification" for purposes of establishing a prima facie case, but the converse seems to make sense in that someone who is banned indefinitely from work property is disqualified from working there. Of course, there may be no case law regarding the effect of BOLO-type workplace restrictions on a prima facie case because an individual would not normally think of applying for jobs at a place where it is impossible for him to physically enter. There is no mention of the possibility of teleworking in any of the job descriptions for the 14 positions, but even an employee who teleworks would be expected to have access to the work site, even if for purely administrative reasons.

Plaintiff does not dispute the issuance of the BOLO, but he contends that Defendant's facts regarding the restriction are "misleading and incomplete." First, Plaintiff claims that the BOLO was issued in retaliation for reporting discrimination. Doc. 61 at 2, ¶¶3, 5. Plaintiff seems to be in complete denial of Judge Parker's ruling in *Laul II* rejecting that very claim. Judge Parker found that Plaintiff had "failed to set forth evidence to support a finding that the BOLO was issued in retaliation" and that there was "no evidence that members of the security department, who issued the BOLO, knew about Plaintiff's prior complaints of discrimination." *Laul II,* 16cv01017

JAP/KBM, Doc.71 at 37. This ruling has not been vacated or modified in any way and so the Court agrees with Defendant that Plaintiff is collaterally estopped from relitigating this issue.

Plaintiff also argues that his Q clearance could always be reactivated if he was rehired, but the Q clearance is immaterial and irrelevant to his site restriction from LANL property. LANL was required to report the BOLO site restriction to the Department of Energy ("DOE") which issued the Q clearance. *See* Doc. 58-3 (Martinez Decl.) at 2, ¶3. Also, there would seem to be a zero percent chance that DOE would issue a Q clearance to an employee who is barred from physically entering *any* LANL work site in *any* employment capacity due to misconduct. Finally, Plaintiff does not dispute that in his job applications, he falsely represented that he still has a Q Clearance which is ironic since he claims that his Q clearance can be reactivated. *See* Doc. 58-10 at 35 ( resume stating at page 3: "Have Q clearance"). This falsehood certainly does not improve Plaintiff's chances of ever getting another Q clearance.

Dr. Laul also points out that he was told he could apply for job positions but he has never been interviewed or hired after the BOLO was issued. *See, e.g.,* Doc. 61 at 1-2, ¶¶3-4. This statement is not only inadmissible hearsay, but also misrepresents evidence. First, Mr. Marquez (former Lab Director during the relevant period) did send a letter to Plaintiff immediately after his termination, telling him that he could reapply for positions at LANL—but this letter pre-dated the BOLO and so at the time, Plaintiff still had access to LANL work sites. Doc. 67-4. In the letter, Mr. Marquez denied Dr. Laul's request for reinstatement and told him that he was "free to apply as an external candidate for posted jobs" that fit his skill set. *Id.* Second, Plaintiff did apply for jobs after he was terminated—*Laul II* is Plaintiff's unsuccessful attempt to charge Defendant with discriminatory failure to rehire him for numerous jobs he applied for between October 2014 and

11

May 2015.  An invitation to *apply* for jobs has no bearing on whether an interview or job offer will follow.

The subsequent site restriction by LANL Security created a circumstance that disqualified Dr. Laul indefinitely from any of the positions he applied for and made him ineligible for employment with LANL.  The BOLO also serves as a bar to Plaintiff's claims of discrimination. Dr. Laul cannot establish a prima facie case under either Title VII or the ADEA because his *disqualification* for employment at LANL refutes any claim that he is "qualified."

Based on the Court's ruling on Plaintiff's prima facie case, further analysis of the *McDonnel-Douglas* framework is unnecessary for Plaintiff's discrimination claims under Title VII and ADEA.  Defendant is entitled to summary judgment on Counts I and II alleging discrimination based on age and national origin.

## II.     Retaliation Claims

Plaintiff claims that Defendant retaliated against him because LANL failed to rehire him. Title VII prohibits retaliation against an employee for opposing any practice made unlawful by Title VII or for asserting a charge, testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII.  42 U.S.C. § 2000e-3(a); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).  To the extent that Plaintiff is also alleging a retaliation claim under the ADEA, the elements of a prima facie case are identical.  *See Nealey v. Water District No. 1 of Johnson County*, 324 Fed. Appx. 744, 750 (10th Cir. 2009). ). *See Mattioda v. Whit*e, 323 F.3d 1288, 1293 (10th Cir. 2003) (Title VII case); *Corneveaux v. CUNA Mut. Ins. Grou*p, 76 F.3d 1498, 1507 (10th Cir. 1996) (ADEA case).

Defendant argues that Plaintiff cannot establish a prima facie retaliation claim under Title VII (or the ADEA) where hiring managers for particular positions were unaware of his prior

complaints of discrimination prior before they made their decisions on the best qualified candidate and because he cannot show a causal connection between any prior complaints of discrimination and his non-selection. Defendant further contends that Plaintiff cannot show that the hiring decisions were made to retaliate against him other than for legitimate reasons.

I.      **Prima Facie Case**

To establish a prima facie case of retaliation, the plaintiff must show that: (1) he engaged in protected activity under Title VII; (2) he suffered an adverse employment action; and (3) there is a "but for" causal connection between the protected activity and the adverse employment action. *Id.* at 1262-63; *see Univ. of Texas SW Med. Center v. Nassar*, 133 S.Ct. 2517, 2533 (2013) (holding that Title VII retaliation claims must be proved according to traditional principles of but-for causation).

    A.      Protected Activity and Adverse Action

"Protected activity" for purposes of Title VII (or ADEA) retaliation includes lawsuits and informal complaints where a plaintiff opposes unlawful employment practices. *See O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1255 (10th Cir. 2001) (informal complaints to superiors and litigation are protected activity for purposes of Title VII retaliation claim); *Annett v. Univ. of Kansas,* 371 F.3d 1233 (10th Cir. 2004); *cmp. Comstock v. Consumers Markets, Inc.,* 953 F.Supp. 1096, 1103 (W.D.Mo.1996) (employee's lawsuit not "protected activity" under Title VII, where suit not brought under Title VII and did not allege employer engaged in any conduct that violated Title VII). It is undisputed that Dr. Laul's August 2015 lawsuit against LANL and his prior complaints of discrimination are "protected activity." Nor is there any dispute that Plaintiff's non-selection employment satisfies the "adverse employment action" requirement for a prima facie

case. *See Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1043 (7th Cir. 2000) (failure to rehire undisputed as adverse action).

Defendant contends, however, that Dr. Laul cannot show a causal connection between his prior complaints of discrimination and his non-selection for any of the 14 positions because the hiring managers were not aware of Plaintiff's prior complaints during the hiring process.

B.     Causation

At the prima facie stage, the causal connection may be shown by producing "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Bullington v. United Air Lines*, 186 F.3d 1301) (10th Cir. 1999); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (in some cases, such causal connection is shown when the adverse action closely follows the protected conduct).

1.     *Employer's Awareness of Protected Activity*

An employer's awareness of alleged protected activity could satisfy the causation requirement in a prima facie case. *See Petersen v. Utah Dep't of Corrections,* 301 F.3d 1182, 1188 (10th Cir. 2002) (a decisionmaker must be aware of alleged protected activity to give rise to a claim for retaliation); *Kendrick v. Penske Transp. Servs.,* 220 F.3d 1220, 1231 (10th Cir.2000) (court must consider facts as they appeared to the person making the decision at the time). None of the ten hiring managers involved in the selection of candidates knew about Plaintiff's prior complaints of unfair treatment based on age or national origin and Plaintiff does not offer any facts to suggest otherwise. However, Defendant overlooks the fact that Mr. James Tingey and Mr. Wayne Hohs, hiring managers for 5 of the 14 job postings at issue, were aware that Dr. Laul had sued LANL in August 2015 for unfair treatment on the basis of age and national origin. Mr. Hohs was told about the lawsuit by Ms. Minton-Hughes, a member of the Interview Committee for one

of the positions. *See* Deft's Fact 28. Although Plaintiff submits no evidence to suggest a "but-for" connection between an awareness of his lawsuit and his non-selection, the Court will assume that Plaintiff satisfies the causation requirement in a prima facie case.

There is no evidence, and it is undisputed, that any of the hiring managers for the remaining 9 positions knew about Dr. Laul's August 2015 lawsuit or his prior complaints of discrimination or retaliation.[3] An employer's awareness of protected activity is a key requirement in a prima facie case. *See Petersen v. Utah Dept. of Corrections*, 301 F.3d 1182 (10th Cir. 2002) (no retaliation where retaliatory supervisor was unaware that employee engaged in protected opposition ); *Jones v. Barnhart,* 349 F.3d 1260, 1269 (10th Cir. 2003) (causation requirement of prima facie case not met where employer not aware of employee's outspoken complaints of racial discrimination). The Court need not address those 9 jobs further except to find that Plaintiff cannot establish a prima facie case of retaliation for those positions and instead will focus the discussion on the 5 positions for which Mr. Tingey and Mr. Hohs were the hiring managers, which are the following:

| Job Posting | Hiring Manager | Date Plaintiff Applied |
|---|---|---|
| IRC 43155- Safety Basis Manager 4 position | Mr. Tingey | October 2, 2015 |
| IRC 47970-Safety Basis Manager 4 | Mr. Tingey | March 20, 2016 |
| IRC 48059- Safety Basis Manager 3/4 | Mr. Tingey | March 10, 2016 |
| IRC 43636-Environmental Professional 4 (SRS) position | Mr. Hohs | September 6, 2015 |
| IRC 43695-Environmental Professional 4 (TRU Waste) position | Mr. Hohs | September 6, 2015 |

> 2. *Temporal Proximity*

---

[3] Mr. Tingey was also aware of the BOLO issued restricting Dr. Laul's physical access to LANL property, along with Patricia Gallagher, the hiring manager for IRC 42817. Because Ms. Gallagher did not know about the August 2015 lawsuit, Plaintiff cannot show any causation for a prima facie case of retaliation for IRC 42817, and so that job position is eliminated from the discussion. Awareness of the BOLO by any of the hiring managers is irrelevant. Plaintiff does not argue (nor would he succeed in doing so) the BOLO site restriction is protected activity for purposes of a retaliation claim. Inasmuch as Plaintiff argues that the BOLO was issued in retaliation for his complaints of discrimination, the door has shut closed on that issue with Judge Parker's ruling in *Laul II* that Plaintiff had "failed to set forth evidence to support a finding that the BOLO was issued in retaliation."

A close temporal proximity between the protected activity and an adverse employment action can also establish a causal connection. *See Candelaria v. EG&G Energy Measurement, Inc*., 33 F.3d 1259, 1261 (10th Cir. 1994).

Dr. Laul applied for job postings IRC 43155, IRC 43636 and IRC 43695 within one or two months of filing his August 25, 2015 lawsuit against LANL. These events are close enough in temporal proximity to suggest a causal connection between the protected activity and his non-selection for those positions. *See Ramirez v. Oklahoma Dep't. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (concluding that a one and one-half month period between protected activity and adverse action may establish causation); *see also Anderson v. Coors Brewing Co*., 181 F.3d 1171, 1179 (10th Cir. 1999) (assuming that temporal proximity of two months and one week is sufficient to support a prima facie case of retaliation). Plaintiff has therefore shown a prima facie case for these three positions so that the burden shifts to Defendant for further analysis under the *McDonnel-Douglas* framework.

In contrast, Dr. Laul applied for the two other positions (IRC 47970 and IRC 48059) in March 2016—seven months after he filed his civil rights lawsuit against LANL. This span of time is considered too distant to infer any causal connection between the filing of his lawsuit and his non-selection. *See Hysten v. Burlington Northern & Santa Fe Railway Co*., 296 F.3d 1177 (10th Cir. 2002) (almost three months between time of plaintiff's lawsuit and alleged retaliatory act was not close enough in time to establish causation); *Conner v. Schnuck)Markets, In*c., 121 F.3d 1390, 1395 (10th Cir.1997) (four-month time lag between plaintiff's participation in protected activity and his termination by itself would not be sufficient to justify an inference of causation; *Meiners v. Univ. of Kan*., 359 F.3d 1222, 1231 (10th Cir. 2004) (quotation omitted) (a six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation,

but a three-month period, standing alone, is insufficient); *Cook v. Corp. of President of the Church of Jesus Christ of Latter Day Saints*, 121 F. App'x 326 (10th Cir. 2005) (expressing doubt that five-month delay justifies an inference of retaliatory motive).

IRC 47970 and IRC 48059 would normally not be considered in the analysis because of the distant temporal proximity, but because Mr. Tingey and Mr. Hohs were also the hiring managers for the other three positions with a closer temporal proximity, the Court will consider all five positions further in the *McDonnell-Douglas* analysis.

B.      Defendant's Legitimate Reasons for Non-Selection

For each of the 14 positions at issue, Defendant provides a large number of exhibits, including but not limited to: the job posting for that position, the relevant Hiring Documentation Reports, Plaintiff's cover letter and resume and the cover letter and resume for the successful candidate for that job. The Hiring Documentation Report details information about the hiring process for that specific position, such as the name of the hiring manager for that position; the date the application was received; and the applicant's status (for example, "First interview," "Make offer," "Terminate application" and "Offer rejected"). Following the completion of the interviews and hiring process, a code was entered in the last column on the right in the Hiring Documentation Report to describe the reason for the applicant's status, such as "5a" ("not best qualified"); "5b" ("Unreachable"); "5c" ("does not meet minimum requirements; "5d" ("Application materials false"); and "5e" ("poor references"). The code explanations are included on the last page of each Hiring Documentation Report. *See, e.g.,* Doc. 58-5 at 15; *see also* Doc. 58 at 41, n. 35; Doc. 58-11 at 3, ¶9 (Haagenstad Decl. stating that applicants with "5c" code were terminated because they were "not best qualified for the job"); Doc. 61-1 at 51 (Tepley Depo. at 15).

1.      *IRC 43155 and IRC 47970: Safety Basis Manager 4 positions*

After reviewing Dr. Laul's application, Mr. Tingey concluded that Dr. Laul did not meet the minimum qualifications for these Safety Basis Manager 4 position. Doc. 58-5 at 1-7 (Tingey Decl.); at 9-12 (job posting requirements); Doc. 58-10 at 33 (Laul cover letter and resume).

Both of these positions required heavy management experience, which Plaintiff's resume does not reflect that he possessed. For IRC 43155, the hiring committee selected Seth Johnson, an internal candidate whose background and experience were well within both the job requirements and the desired skills for that position. Mr. Johnson had significant management experience as construction supervisor and Project Leader at TA-55 at LANL.[4] Doc. 58-5 at 3 (Tingey Decl); at 25-26 (Johnson resume). He also held a Masters Degree in Project Management and worked as a Project Management Professional. Dr. Laul had neither of these qualifications.

Karen McHugh, who was hired for IRC 47970, also had considerable management experience at various LANL sites. She was also an acting Group Leader for the LANL Waste Facilities and Balance of Plant Facilities Safety Basis Division, which the hiring committee felt made her the best qualified candidate for that position.[5]

Plaintiff "disputes" the facts regarding IRC 47970 (Deft's Facts 18-24), contending that Mr. Tingey admitted in his deposition that re-training would enhance his ability to perform the Safety Basis Analyst job. However, Mr. Tingey did *not* testify that Plaintiff had received re-training since his 2013 termination, as Plaintiff suggests. Mr. Tingey made a hypothetical statement that the purpose of re-training to enhance "the ability of the analyst to perform." Doc. 61-1 at 34-35 (page 20-21 of Tingey Depo.). Mr. Tingey never testified either that Dr. Laul had

---

[4] Defendant does not provide any details of "TA-55," but an internet search indicates that it is a location or "Technical Area" within LANL's Plutonium Facility.

[5] The Court assumes that none of the candidates for the 14 positions, with the exception of Dr. Laul, had ever been issued a BOLO restriction or lost their Q clearances—either of which would have weighed heavily against selection even on an initial review.

received re-training since he was terminated or that such training would have improved Plaintiff's performance on the Safety Basis position for which he was applying. Plaintiff's attempt to dispute Defendant's facts regarding IRC 43155 amounts to sheer mischaracterization of Mr. Tingey's deposition testimony. Thus, Defendant's facts will be considered by the Court as undisputed.

Plaintiff also "disputes" Defendant's Facts regarding IRC 47970 (Facts 78-84) by claiming that his name did not appear on the LANL Hiring Documentation Report ("hiring report") for IRC 47970. He suggests, without offering any real facts, that HR was able to "prescreen" candidates and played a role in his name not appearing on the hiring report. Plaintiff attributes an improper motive where there is none to be found.

According to Daniel Tepley, Program Manager for the Plutonium Strategy Infrastructure Division at LANL, LANL's hiring process has several stages. Doc. 61-1 (Pltff's Ex. I). It begins with an initial screening done by the "Oracle" system within its Human Resources ("HR") Department, which provides a list of candidates and their resumes or cover letters. Doc. 61-1 at 51 (Pltff's Ex. I at 13-15). After applications are reviewed for minimum qualifications, they are reviewed by the hiring managers who appoint hiring committees to make recommendations for the best qualified candidates. These recommended candidates are then interviewed by the Interview Committee that was elected for that position. *See, e.g.,* Doc. 58 at 7 (Fact 14); at 9 (Fact 25); at 14 (Fact 52); at 15 (Fact 59). Dr. Tepley's description of LANL's hiring process is not disputed.

Dr. Laul offers no evidence to rebut Defendant's facts for this position. First, Dr. Laul's name did not appear on the hiring report for IRC 47970 and two other positions (IRC 48649 and IRC 45015), but he *was* listed on the hiring reports for all of the other four positions being considered here by the Court. Doc. 58-5 at 53 (IRC 48059); Doc. 58-5 at 14 (IRC 43155); Doc. 58-5 at 11 (IRC 43636); Doc. 58-9 at 12 (IRC 43695). Plaintiff offers no plausible explanation

for why HR might "prescreen" him as an excuse to remove him from consideration from three positions but leave his name on the report for the rest.

Second, Mr. Tepley testified that "first line" hiring managers might do the initial screening of candidates for minimum requirements, in which case HR might then remove his name from the list based on a negative assessment of threshold qualifications. He stated that:

> typically, either myself or my first line manager would have conducted a preliminary review of the applicants' cover letters and resumes on Oracle, the system Human Resources uses to facilitate hiring. I understood that the names of the applicants who are coded as not qualified on an initial interview may not appear on the final Hiring Documentation Report.

Doc. 58-15 at 2, ¶6 (f; Doc. 61-1 at 5 (page 13:8-4, 24:9-17).

Third, according to Leah Sanchez, LANL's HR Manager, five other applicants who were the subjects of an initial review *also* do not appear on the Hiring Documentation Reports for IRC 45015. Doc. 58-16 at 3, ¶11(B). Mr. Tingey also observed that Plaintiff's name does not appear for one of the hiring reports for another position (IRC 48059) because he belonged to a subset of applicants marked as "not qualified" in the Oracle computer recruiting system before the hiring decision was made for IRC 48059. Yet, Dr. Laul *was* listed on another hiring report for that same position. Doc 58-5 at 5, ¶19. Plaintiff's "disputes" regarding the facts for IRC 47970 are grounded in nothing more than speculation and those facts remain undisputed.

Plaintiff also attempts to dispute facts regarding IRC 47970 by claiming that Defendant "failed to produce" the entire list of applicants for the positions where his name is not listed on the hiring reports. For support, Plaintiff relies on his written interrogatory requests (Doc. 61-1 at 61, or Pltff's Ex. M), but the Court fails to see how a complete list of applicants would have been responsive to any of those interrogatories—or for that matter, are relevant now to any of the facts regarding any of the positions.

## 2. *IRC 48059: Safety Basis Manager 3/4*

Mr. Tingey concluded that Dr. Laul did not meet the minimum requirements for this Safety Basis Manager position, based on his review of his cover letter and resume, and on his prior poor performance at LANL in a Safety Basis Analysis 4 position. Doc. 58-5 at 53. The successful candidates for IRC 48059 were Carl Schepens, Lynsey Fyffe, Matthew Miller, and Charles Slama. They were hired for these vacancies based on the match of their prior experience with the minimum job requirements:

(1) Mr. Schepens had experience as a Lead Safety Analyst for Solid and Liquid Waste facilities at LANL and at other facilities, which qualified him as a Level 4 Safety Basis Analyst;

(2) Ms. Fyffe's in-depth knowledge and understanding of safety basis documents such as Hazard ID/Analysis, Hazard Categorization, and Unqualified Safety Questions, as well as her experience with a DOE Fellowship, qualified her as a Level 3 Safety Basis Analyst;

(3) Mr. Miller had extensive Navel nuclear background, including direct management of radiation safety processes in accordance with DOE Safety Basis and Navel Reactor policies and regulations, which qualified him as a Level 3 Safety Basis Analyst;

(4) Mr. Slama's extensive navel nuclear background and current employment using the Unqualified Safety Questions and Hazard Analysis processes, qualified him as a Level 4 Safety Basis Analyst.

Plaintiff does not dispute the qualifications of these individuals; rather, he states only that he "is better qualified"—without specifically explaining how or why. Resp. to Deft's Facts 91-95. That statement does not constitute a material fact, much less one that rebuts the facts presented by Defendant. *Cmp.* Doc. 58-5 at 37-42 (Dr. Laul's resume).

## 3. *IRC 43636: Environmental Professional 4 (SRS) position*

Mr. Hohs and three other individuals from the six-person Interview Committee reviewed all applications for this Group Leader job. After this review, Mr. Hohs created a list of 8 persons he believed were best qualified for the position and who would be interviewed. Dr. Laul was not on that list because Mr. Hohs did not believe that he was one of the best qualified applicants. Doc. 58-8 at 2, ¶6; *id.* at 11.

Paul Newberry was hired based on his 25 years of experience in the management of the storage, shipping, and remediation of both Mixed Low Level and Transuranic Waste. He had 11 years of management experience as a Group Leader and had a specialized TA-54 RCRA Permit with respect to storage, receiving and shipment of waste. The Interview Committee decided not to interview Dr. Laul because he lacked general as well as specific experience relevant to operational functions associated with transuranic and hazardous waste management.

Plaintiff's "disputes" on these facts are as immaterial and non-responsive as those he offers on the other positions and it would serve no purpose to spend time discussing more than one or two for illustration. As one example, Defendant's Fact 31 states that Mr. Hohs was not aware of and did not base his hiring decisions for IRC 43636 or 43695 on the basis of age or national origin. In response, Plaintiff states that "Defendant admits to direct evidence of retaliation." Resp to Fact 31. The statement is not a fact, is misrepresentative and inaccurate, and not legally correct. While Mr. Hohs knew about Dr. Laul's August 2015 lawsuit for wrongful termination, that knowledge is significant only in establishing a prima facie case and is certainly *not* "direct" evidence of retaliation. Dr. Laul's legal conclusion is not only incorrect but it makes little sense: it would mean that an employer's mere knowledge of protected activity makes the employer automatically liable for illegal motive, whether or not that knowledge is the "but-for" reason for the adverse action. Plaintiff's response to Fact 31 therefore does not create an issue of fact or otherwise rebut

Fact 31.  Another example of a plainly unsupported statement is Plaintiff's curt "denial" of Defendant's Fact 33 listing Mr. Newberry's qualifications accompanying his statement that he was "more qualified than Mr. Newberry."

        *4.*       *IRC 43695: Environmental Professional 4 (TRU Waste) position*

The successful candidate for IRC 43695, David Frederici, was the Committee's highest rated applicant for both of the Group Leader positions in IRC 43636 and IRC 43695 in the Waste Disposition Division.[6]

Dr. Laul was not included in the list of seven candidates selected for initial interview by Mr. Hohs and two others from the Interview Committee.  At least 41 applications were submitted for this position, which involved the environment waste management and remediation at the nuclear facility.  Doc. 58-9 at 2 ("The primary task before the environmental Manager 4 was the treatment of the Remediated Nitrate Salt waste stream and the restart of the WCCR Nuclear Facility."). Two members of the Interview Committee conducted a secondary review of all the applicants for this position and compared them to the position's minimum job requirements.  As a result of this secondary review, six additional applicants (beyond those initially recommended) were identified, including Dr. Laul and an applicant named Leonard Kline.

In the course of conducting her own review of all the applicants, Ms. Minton-Hughes advised Mr. Hohs by e-mail that she had worked with both Dr. Laul and Mr. Kline and that she believed neither should be considered further due to their poor performance when they worked for her.[7]  Notwithstanding Ms. Minton-Hughes e-mail, Mr. Hohs still considered Dr. Laul's

---

[6] As previously mentioned, Paul Newberry was ultimately selected to fill IRC 43636.

[7] Ms. Minton-Hughes, it will be remembered, advised Mr. Hohs that Plaintiff had previously sued LANL for wrongful termination.  That fact allowed Plaintiff to get past the prima facie stage but has little import at this stage in the analysis.  At this point, the Court considers whether Plaintiff is able to present evidence that his lawsuit against LANL was the reason he was not selected for this position.

application in the final review, although Dr. Laul was not included in the final list of four candidates selected for interviews. *See* Doc. 58-9 at 12 (coding Dr. Laul as "5c" or not meeting minimum requirements). The Interview Committee also decided not to interview Dr. Laul, because he lacked general as well as specific relevant experience with the particular waste streams relevant for this job.

After the Interview Committee completed the interviews, Mr. Hohs interviewed the top candidates for both this position and IRC 43636 (see discussion above). After consulting with Dave Funk, the Deputy Associate Director for Environmental Management and Dave Frederici himself, it was decided that Mr. Frederici was the best applicant to serve as the Group Leader for Waste Process Engineering (IRC 43695).

Defendant's evidence supports the facts presented describing why Dr. Laul was not selected for the position. Mr. Frederici's resume describes extensive experience (as well as knowledge) about environmental waste management generally and transuranic waste remediation specifically, for example:

- Doc. 58-9 at 23 (describing Mr. Frederici's experience at LANL as Project Manager at "a large work group operating multiple nuclear processes to achieve aggressive transuranic waste remediate goals agreed to by DOE and the State of New Mexico to reduce the risk associated with above ground storage of large quantities of combustible transuranic waste.");

- Doc. 58-9 at 24 (listing Mr. Frederici's experience as a Shift Manager in a Defense Waste Processing Facility); and

- Doc. 58-9 at 25 (familiarity with LANL Hazardous Waste Permit and listing six years of experience within LANL's Environmental Programs dealing with environmental work and nuclear facility operation).

In comparison, Plaintiff's resume devotes a few lines to his "waste management" qualifications, stating that Plaintiff has "extensive knowledge in RCRAS, LLW, TRU, and mixed

hazard waste including their packaging, shipping, storage criteria, compliance certification, and inspection." Doc. 58-9 at 19. There are no details about time periods or any actual experience in the area of waste management describing where Plaintiff worked, how long or in what capacity.

Plaintiff "denies" Defendant's facts regarding IRC 43695 and as one example, claims that (1) "Mr. Hohs did not hire Plaintiff" and (2) that a member of the hiring committee "placed Plaintiff on his list of candidates prior to Ms. Minton-Hughes' interjection." Neither statement points to any supporting evidence.

The Court finds that Defendant has presented solid and legitimate reasons for its non-selection of Dr. Laul and has therefore satisfied its burden of production at this stage of the *McDonnel-Douglas* analysis.

C.  Pretext

If a defendant articulates legitimate and non-retaliatory reasons for its actions, then the ultimate burden rests with the plaintiff to show that the defendant's proffered reasons are pretextual. *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008); *Murray v. City of Sapulpa*, 45 F.3d 1417, 1421 (10th Cir. 1995) (ultimate burden of persuasion in Title VII cases rests on plaintiff).

Pretext can be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). Evidence of pretext "may take a variety of forms" but typically, a plaintiff may show pretext in one of three ways:

(1) with evidence that the defendant's stated reason for the adverse employment action was false;

(2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or

(3) with evidence that the plaintiff was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.

*Id.* (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 187–88 (1989)). Dr. Laul contends that that he was best qualified for every one of the 14 positions he applied for and that the reasons LANL gives for non-selection is pretextual for retaliatory motives. His problem in advancing this argument is that he offers absolutely no evidence to show pretext and even attributes his non-hire to reasons *other* than retaliation:

- Plaintiff stated that he has no knowledge of whether the hiring managers for any of the positions were aware of his prior lawsuits or what motivated the managers' non-selection decisions. He just assumed they were aware because "[w]ord of mouth goes like fire." Doc. 58-1 at 13 (Deft's Ex. A at 165-66; at 735: 3-7; at 985: 10-15; at 1052:10-14).

- Plaintiff believes that the hiring managers were biased against him because of his age or national original because he was rated as "5C" in the majority of the applications he submitted. Ex. Doc. 58-1 at 33 (Deft's Ex. A at 506). For example, in response to being asked if Mr. Hohs ever did anything that he personally regarded as evidence or an indication of age or national origin bias, Plaintiff stated "The fact I got 5C, I'm ruled out." Doc. 58-1 at 35 (Deft's Ex. A at 515).

- Plaintiff himself is even unclear about the alleged cause of the retaliation. He attributes the non-hires to the "jealousy" of hiring managers (Doc. 58-1 at 6, Deft's Ex. A at 115:14-117:3); to work getting out about his prior poor performance as a Safety Basis 4 LANL employee (Doc. 58-1 at 21, Deft's Ex. A at 226:2-227:2); and to hiring managers' "favoritism" (Doc. 58-1 at 26, Deft's Ex. A at 379:25-381:5).

Even assuming that Plaintiff is correct that was not hired because of jealousy, prior poor performance, or personal favoritism, he has not shown pretext because none of those motivations are prohibited under either Title VII or the ADEA. *See Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1153 (10th Cir.2008) ("Employers are free to terminate at-will

employees for any other reason—however unfair, unwise, or even erroneous—so long as it is not unlawful.[8]

Dr. Laul does not accept that others could have been more qualified than he for any of the 14 positions, despite the substantial undisputed evidence presented by Defendant, but he fails to show any evidence that his non-selection was retaliatory or that Defendant's reasons were pretextual for illegitimate retaliatory motives. *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment). Defendant is therefore entitled to summary judgment on Plaintiff's claims of retaliation under Title VII and the ADEA.

Plaintiff's qualifications have not changed for the better since his last lawsuit (*Laul III).* Since that time, Plaintiff has been barred from entering any of the LANL facilities for employment purposes and his Q clearance was revoked. The Court wonders how, after three unsuccessful attempts to sue his employer for civil rights violations, Plaintiff would reasonably have a good faith belief that this fourth attempt would fare any better.[9]

**THEREFORE,**

---

[8] *See Housley v. Boeing Co*., 177 F.Supp.2d 1209, 1217 (D. Kan. 2001) (favoritism based on criteria other than gender or age does not violate the federal anti-discrimination laws and "does not raise an inference of discrimination."); *E.E.O.C. v. Flasher Co., Inc*., 986 F.2d 1312, 1321 (10th Cir. 1992) (Title VII does not prohibit motivation for employer's decision based on favoritism, revenge, or random or erroneous conduct or judgment); *Taken et al v. Okla Corp Comm*., 125 F.3d 1366 (10th Cir. 1997) (favoritism, unfair treatment and unwise business decisions do not violate Title VII unless based on a prohibited classification).

  In the final analysis, it matters little whether Plaintiff was not  actually not hired because of reasons different from those presented by Defendant, as long as that reason was non-discriminatory and non-retaliatory. *See Randle v. City of Aurora*, 69 F.3d 441, 451 n.14 (10th Cir. 1995) (when true reason for employment decision is not a prohibited discriminatory reason, even if concealed, defendant is entitled to summary judgment although it was pretextual).

[9] Plaintiff alleged discrimination or retaliation (or both) in all four lawsuits. *Laul III* was remanded to state court because it asserted state claims of breach of contract and retaliation under New Mexico's Human Rights Act. Thus, the instant lawsuit is Plaintiff's fourth attempt to sue LANL for civil rights violations. *See Laul III,* 16-cv-01386 MV-JHR, Doc. 1-2.

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (**Doc. 58**) is hereby GRANTED in that Plaintiff's claims of discrimination based on age and brought under the ADEA (Count I) are hereby DISMISSED WITH PREJUDICE;

**IT IS FURTHER ORDERED** that Plaintiff's claims of discrimination based on national origin brought under Title VII (Count II) are hereby DISMISSED WITH PREJUDICE;

**IT IS FINALLY ORDERED** that Plaintiff's claims of retaliation Count III brought under Title VII and, if asserted under the ADEA, are hereby DISMISSED WITH PREJUDICE.

A Rule 58 Judgment shall be entered separately.

_____

CHIEF UNITED STATES DISTRICT JUDGE